## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IMPACT APPLICATIONS, INC.,

        Plaintiff                      Civil Action No.

      vs.                           JURY TRIAL DEMANDED

IMPAXX SOLUTIONS, INC.,

        Defendant.

### COMPLAINT FOR
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

    Plaintiff, ImPACT Applications, Inc. ("ImPACT Applications"), by and through its undersigned counsel, brings this Complaint for Trademark Infringement and Unfair Competition against Defendant IMPAXX Solutions, Inc. ("IMPAXX").

### NATURE OF THE ACTION

    1.    This is an action for trademark infringement, false designation of origin, false representation and description, and other unfair competitive conduct on the part of the Defendant in violation of the Lanham Act, 15 U.S.C. § 1051 et seq.; Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, and 1125(a), respectively; the Pennsylvania Trademark Act, 54 Pa.C.S. §§ 1101 et seq.; 54 Pa.C.S. § 1124; and Plaintiff's common law trademark and other rights. Plaintiff seeks permanent injunctive relief as well as other equitable relief and compensatory and punitive damages arising from Defendant's willful, unlawful, intentional, unfair, and misleading conduct and unjust enrichment.

### THE PARTIES AND THE TRADEMARKS AT ISSUE

    2.    Plaintiff, ImPACT Applications, is a Pennsylvania corporation with a principal place of business located at 9665 Granite Ridge Drive, Suite 550, San Diego, California, 92123.

3.      ImPACT Application's business operations include software for neurocognitive testing, assessment, and evaluation for use in ImPACT Applications' proprietary computerized neurocognitive evaluation system and providing services associated with training for use of ImPACT Applications' proprietary system (collectively referred to hereinafter as the "Neurocognitive Evaluation Tools and Services").

4.      Several hundred ImPACT Application customers have the right to its trademarks pursuant to applicable services agreements.

5.      ImPACT Applications offers its Neurocognitive Evaluation Tools and Services throughout the United States and abroad.

6.      In connection with its commercial efforts, ImPACT Applications owns fourteen Pending and Registered Trademarks, referred to hereafter collectively as the "ImPACT Marks" attached hereto as Exhibit A and incorporated herein by reference.

7.      Printouts from the United States Patent and Trademark Office ("USPTO") Web site that provide registration or application information for each of the ImPACT Marks are appended hereto as Exhibits B-1 through B-14, respectively.

8.      The ImPACT Marks are all valid and subsisting.

9.      Beginning in at least June 2000 and continuing now, Plaintiff ImPACT Applications has been creating and developing a significant ImPACT brand built around the IMPACT formative trademarks and service marks on and in connection with its brand of Neurocognitive Evaluation Tools and Services, including, IMPACT PASSPORT, SIDELINE IMPACT, IMPACT QUICKTEST, IMPACT QUICKTEST & Design, IMPACT PEDIATRIC, IMPACT APPLICATIONS, INC. & Design, MOBILE IMPACT CUSTOMER CENTER & Design and IMPACT & Design.

10.     Defendant IMPAXX is, upon information and belief, a Delaware corporation registered to do business in California with a principal place of business at 369 LaCuesta Drive, Portola Valley, California, 94028.

11.     Upon further information and belief, Defendant IMPAXX adopted, used, and continues to use the mark "IMPAXX Solutions," which is referred to herein as the "Infringing Mark."

12.     Examples of the Infringing Mark is appended hereto as Exhibit C. Defendant has used the Infringing Mark in interstate and intrastate commerce in marketing and selling its neurocognitive evaluation products.

13.     Upon further information and belief, Defendant has used and continues to use the Infringing Mark in connection with the sale, offering for sale, distribution, and advertising of its neurocognitive evaluation products.

14.     Upon information and belief, the Infringing Mark is identical to or confusingly similar to Plaintiffs ImPACT Marks.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§ 1114, 1116, 1121, and 1125(a), and 28 U.S.C. §§ 1331 and 1338(a) in that this action arises under the Lanham Act, 15 U.S.C. § 1051 et seq.

16.     This Court also has subject matter jurisdiction over the state and common law claims of trademark infringement and unfair competition averred herein pursuant to the provisions of 28 U.S.C. § 1338(b) in that the claims are joined with a substantial and related claim under the Lanham Act, 15 U.S.C. § 1051 et seq.

17.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because, upon information and belief, Defendant is a corporation that is subject to personal jurisdiction in this

Judicial District at the time of commencing this action and Defendant has conducted business and committed acts complained of in this Judicial District.

## FACTS

18.     ImPACT Applications filed its first application for registration of IMPACT in International Classes 009 and 041 in the USPTO on November 5, 2010, and the IMPACT mark was registered in the USPTO Principal Register on December 20, 2011, hereinafter referred to as the '990 Mark. *See* Exhibit B10.

19.     Since as early as about 2006, ImPACT Applications has been using the IMPACT trademark on and in connection with its Neurocognitive Evaluation Tools and Services, specifically its non-downloadable computer software for neurocognitive testing, assessment, and evaluation, that it develops, manufactures, distributes, licenses and sells to distinguish the Neurocognitive Evaluation Tools and Services from those made, sold, and offered by others.

20.     Since as early as about 2004, ImPACT Applications has been using the SIDELINE IMPACT Mark on and in connection with its Neurocognitive Evaluation Tools and Services that it develops, manufactures, distributes, licenses and sells to distinguish its Neurocognitive Evaluation Tools and Services from those made, sold, and offered by others.

21.     ImPACT Applications has owned a trademark registration for SIDELINE IMPACT since December 11, 2012.  *See* Exhibit B12.

22.     ImPACT Applications brand products sold in connection with the ImPACT Marks have gained significant recognition in the minds of physicians, nurses, athletic directors and trainers, and neuropsychologists throughout the United States and abroad as strong indicators of quality neurocognitive evaluation tools and services by reason of the longstanding and continuous use of the ImPACT Marks and through extensive promotion and marketing of the ImPACT Marks through

literature, marketing materials, trade shows, exhibits, magazine advertisements, video content, direct sales calls, trade press, and other media, such as the World Wide Web.

23.     As a result, the purchasing public has come to know, rely upon, and recognize the ImPACT Marks as indicating a source of high quality and reliable goods and services in the neurocognitive evaluation tool industry.

24.     Additionally, certain of the ImPACT Marks are associated with the first concussion-specific medical devices to receive FDA clearance. https://www.impacttest.com/news/show.php?947.

25.     Upon information and belief, the public has been given notice of the exclusive trademark rights in and to the ImPACT Marks by, for example prominently, displaying the registered trademark symbol "®" on the packaging, labels, literature, marketing materials, Web pages, and other advertising materials of the Neurocognitive Evaluation Tools and Services throughout the United States and abroad.

26.     ImPACT Applications has continuously used the ImPACT Marks to identify the ImPACT brand of Neurocognitive Evaluation Tools and Services.

27.     The ImPACT Marks are owned exclusively by ImPACT Applications.

28.     Defendant's use of the Infringing Mark, which is identical or confusingly similar to the ImPACT Marks, has been and continues to be without authorization.

29.     Upon information and belief, IMPAXX has offered and continues to offer for sale, through its Web site (www.impaxx.com) and its dealers and distributors, neurocognitive evaluation products that contain the Infringing Mark which are identical to or confusingly similar to the ImPACT Marks. Such neurocognitive evaluation products were not and are not developed, manufactured or distributed by ImPACT Applications.

30.     IMPAXX is using the Infringing Mark in the U.S. relating to goods or services for neurocognitive sensing and evaluation for head injuries.

31.     For example, the IMPAXX web site contains the following text: "Our innovative and patent pending combination of wearable sensor and impact biomarker *technologies can help monitor cumulative impact loads to the head,* limbs, and joints, and alert users when they are at risk of potential injuries before serious symptoms emerge."

32.     Upon information and belief, Defendant's use of the Infringing Mark on the neurocognitive evaluation products that Defendant offers for sale is likely to confuse or to cause mistake or to deceive consumers to believe that the neurocognitive evaluation products offered by Defendant are produced, sponsored, or approved by ImPACT Applications or that Defendant is affiliated or connected with ImPACT Applications, all to the detriment of ImPACT Applications.

33.     The infringement by IMPAXX is neither accident nor mistake.

34.     IMPAXX's president is John Ralston, the former CEO of a company called X2IMPACT ("X2").

35.     ImPACT Applications sued X2 in 2012 in the United States District Court for the Western District of Pennsylvania for trademark infringement and other claims that are nearly identical to the instant action. (2:12-cv-01501).

36.     As such, Defendant had actual knowledge of the ImPACT Marks and the intellectual property rights of Plaintiff.

37.     Because of this prior knowledge, Defendants acts alleged herein are willful.


**COUNT I**

**FEDERAL TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. §1114**

38.     Plaintiff ImPACT Applications incorporates by reference all other paragraphs of this Complaint as if the same were fully set forth herein.

39.     The '990 Mark is valid and subsisting and provides ImPACT Applications with the exclusive right to use the word "IMPACT" in connection with neurocognitive testing, assessment and evaluation in commerce in the United States, the Commonwealth of Pennsylvania, and this Judicial District.

40.     Defendant has infringed ImPACT applications' '990 Mark in interstate commerce, in the Commonwealth of Pennsylvania, and within this Judicial District by various acts, including using in commerce reproductions, copies, or colorable imitations of the '990 Mark in connection with the sale, offering for sale, distribution, and/or advertising of neurocognitive evaluation products, all in violation of 15 U.S.C. § 1114(1)(a).

41.     Defendant has also infringed ImPACT Applications' '990 Mark in interstate commerce, in the Commonwealth of Pennsylvania, and within this Judicial District, by reproducing, copying, or colorably imitating ImPACT Applications' '990 Mark and applying such reproduction, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of neurocognitive evaluation products, all in violation of 15 U.S.C. § 1114(1)(b).

42.     Defendant has filed a trademark application for IMPAXX SOLUTIONS in the U.S. Patent and Trademark Office, Serial. No. 87252609, on November 30, 2016, currently pending, for a system for detecting physical impact to protective sports equipment worn by an athlete, comprised of sensors, data processing units, and display monitors in International Class 009; and for a system for detecting physical impact to an athlete, namely, measuring apparatus comprised of sensors and data processing units worn on an athlete while exercising for the purpose of directly detecting physical impact to the athlete and display monitors to view result of the impact.

43.     This tactic by Defendant's CEO of filing serial trademark applications that are confusingly similar to Plaintiff's marks, after previously settling and abandoning similar marks, renders this case exceptional so as to justify award of attorney fees under 15 U.S.C. § 1117(a).

44.     Based on Defendant's history of vexatious trademark litigation, Defendant has actual and constructive knowledge of Plaintiffs' marks and the likelihood that its use of the name IMPAXX will confuse the relevant target market. Defendant's activity is therefore grounds for the award of fees under 15 U.S.C. § 1117(a) as an exceptional case.

45.     Defendant's use of IMPAXX SOLUTIONS is without permission or approval of ImPACT Applications and such use by Defendant is likely to cause confusion, to cause mistake, and to deceive consumers as to the source of origin of the neurocognitive evaluation products.

46.     Consumers who purchase Defendant's neurocognitive evaluation products that bear the Infringing Mark, believing the neurocognitive evaluation products to be sponsored, associated with, or affiliated with ImPACT Applications, are deceived and misled, thereby resulting in a loss of the goodwill in the ImPACT Marks and creating confusion, thus irreparably injuring ImPACT Applications.

47.     Upon information and belief, Defendant's continued use of the Infringing Mark is with the deliberate intention of trading on and benefiting from the valuable reputation and goodwill established in the ImPACT Marks and gives the false impression that Defendant's products are associated with ImPACT Applications.

48.     ImPACT Applications has no control over the quality of the neurocognitive evaluation products offered and sold by Defendant and, because of the confusion as to the source and false association with ImPACT Applications engendered by Defendant, ImPACT Applications' valuable goodwill with respect to the ImPACT Marks is at the mercy of Defendant unless such use is preliminarily and permanently enjoined.

49.     Defendant's use of the Infringing Mark is a deliberate, knowing, and willful infringement of ImPACT Applications' statutory rights in and to the ImPACT Marks. Such acts have been undertaken in reckless and willful disregard for ImPACT Applications' rights in and to the ImPACT Marks and have been designed specifically to trade upon the goodwill associated with the ImPACT Marks.

## COUNT II

### FALSE DESIGNATION OF ORIGIN PURSUANT TO 15 U.S.C. § 1125(a)

50.     Plaintiff ImPACT Applications by reference all other paragraphs of this Complaint as if the same were fully set forth herein.

51.     Defendant's use of the Infringing Mark in connection with selling its neurocognitive evaluation products creates the false designation of origin that such neurocognitive evaluation products emanate from ImPACT Applications and falsely create the impression that ImPACT Applications sponsors or approves of Defendant's products and falsely associates and affiliates Defendant with ImPACT Applications in violation of 15 U.S.C. § 1125(a).

52.     The unauthorized use of the Infringing Mark in such a manner is intentionally designed to deceive prospective purchasers into believing that the neurocognitive evaluation products sold by Defendant and bearing the Infringing Mark is sold by, originate from, or are endorsed by ImPACT Applications.

53.     Defendant's use of the Infringing Mark is likely to deceive consumers into believing that Defendant is in some way associated with, connected with, or related to ImPACT Applications. Such use is likely to harm the reputation and goodwill of ImPACT Applications.

54.     ImPACT Applications has no control over the quality of the neurocognitive evaluation products offered by Defendant.

55.     Defendant's reckless disregard for ImPACT Applications' rights is harmful to the public and to the outstanding reputation of quality neurocognitive evaluation products associated with Plaintiffs ImPACT Marks.

56.     Defendant's acts complained of herein violate Section 43(a) of The Lanham Act, 15 U.S.C. § 1125(a), and have been undertaken in reckless and willful disregard for ImPACT Applications' rights and designed specifically to trade upon the goodwill associated with the ImPACT Marks.

57.     Upon information and belief, Defendant has with knowledge of the falsity of the designations of origin, descriptions, and/or representations used in connection with the sale of neurocognitive evaluation products, caused them to be advertised, offered, and sold in interstate commerce to the immediate and irreparable damage of ImPACT Applications and the public in violation of 15 U.S.C. § 1125(a).

## COUNT III

## <u>UNFAIR COMPETITION PURSUANT TO 54 Pa.C.S.  § 1124</u>

58.     Plaintiff ImPACT Applications incorporates by reference all other Paragraphs of this Complaint as if the same were fully set forth herein.

59.     By committing the acts herein alleged, including adoption of and use in commerce of the Infringing Mark in connection with neurocognitive evaluation products, Defendant has unfairly appropriated the registered ImPACT Marks, and the reputation and goodwill associated therewith, and its actions in doing so constitute, among other things, unfair competition, infringement of registered and common law trademarks, deceptive advertising, unfair trade practices, and injury to ImPACT Applications' reputation, all in violation of the common law and the laws of the Commonwealth of Pennsylvania, including at least 54 Pa.C.S. § 1124.

60.     Defendant's acts complained of herein have been carried out in bad faith with full knowledge of ImPACT Applications' valuable rights in and to the ImPACT Marks.

61.     Defendant adopted the Infringing Mark with malicious and reckless disregard of ImPACT Applications' rights in and to the ImPACT Marks and with the willful intention to trade on ImPACT Applications' reputation and goodwill. Exemplary and punitive damages are necessary by reason of Defendant's intentionally tortious conduct which has and will continue to cause damage to the rights of ImPACT Applications in its ImPACT Marks and to the business reputation and goodwill of ImPACT Applications, and are necessary to deter future similar conduct by Defendant.

## COUNT IV

## COMMON LAW TRADEMARK INFRINGEMENT

62.     Plaintiff ImPACT Applications incorporates by reference all other paragraphs of the Complaint as if the same were fully set forth herein.

63.     Defendant acts have been intentionally undertaken in reckless and willful disregard for ImPACT Applications' common law trademark rights and. designed specifically to trade upon the goodwill associated with the ImPACT Marks in this judicial district.

64.     Unless and until enjoined by this Court, the acts of Defendant complained of herein will continue unabated, all to the continuing damage and detriment of ImPACT Applications, for which ImPACT Applications has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ImPACT Applications respectfully requests the following relief:

   A.     that this Court grant a Permanent Injunction pursuant to 15 U.S.C. § 1116, enjoining and restraining Defendant and its agents, servants, employees, sales representatives, distributors, subsidiaries,

heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them, from directly or indirectly using the Infringing Mark, including any other marks, words, or names similar thereto which are likely to cause confusion, mistake, or to deceive;

B.     that this Court grant a Permanent Injunction pursuant to 15 U.S.C. § 1116, enjoining and restraining Defendant and its agents servants, employees, sales representatives, distributors, subsidiaries, heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them, from engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure ImPACT Applications' business reputation;

C.     that this Court order pursuant to 15 U.S.C. § 1118 that all products, labels, signs, prints, pamphlets, wrappers, receptacles, banners', advertisements, goods, and counterfeits or colorable imitations in the possession of Defendant and its agents, servants, employees, sales representatives, distributors, subsidiaries, heirs, successors and assigns, and all other persons acting by, through, or in active concert with any of them bearing the Infringing Mark or the ImPACT Marks shalt be delivered up and destroyed;

D.     that Defendants be required to account to and pay ImPACT Applications for any and all profits derived from the sale of neurocognitive evaluation products bearing the Infringing Mark or the ImPACT Marks and for all damages sustained by ImPACT Applications by reason of said acts of infringement and unfair competition complained of herein and that said damages be trebled pursuant to 15 U.S.C. § 1117(b) and 54 Pa.C.S. § 1125(a) as a result of Defendant's willful violations of 15 U.S.C, § 1114(1)(a) and 54 Pa. C.S. § 1124;

E.     that the Court award punitive and exemplary damages against Defendant by reason of Defendant's intentional and willful conduct and in favor of ImPACT Applications;

F.      declaring that this is an exceptional case, pursuant to 15 U.S.C. §1117, because of the willful and deliberate nature of Defendants' acts of unfair competition, trademark infringement and dilution and awarding Plaintiff its reasonable attorneys' fees; and

G.      that the Court grant such other and further relief as the Court deems just in the circumstances.

## DEMAND FOR JURY TRIAL

**Jury trial demanded on all claims so triable.**

Dated this 25th day of July 2017

Respectfully submitted,

SPILMAN, THOMAS & BATTLE

By: /s/Julian E. Neiser

Pa ID No. 87306
One Oxford Centre
Suite 3440
Pittsburgh, PA 15219
(412) 325-1116
jneiser@spilmanlaw.com
*Counsel for Plaintiff*
*ImPACT Applications, Inc*